# McBERTY *v.* COOK.

PATENTS; INTERFERENCE.

1. Where a contention by one of the parties to an interference has been considered at length and with care by each of the expert tribunals of the Patent Office and has by each been declared unfounded, a clear and satisfactory showing must be made to warrant this court in reversing their decisions.

2. A device embodying two springs used to disrupt a telephone circuit is substantially equivalent to a device embodying one spring for the same purpose.

3. In an interference between an application filed March 22, 1897, for the reissue of McB's patent, dated August 13, 1895, and an application of C filed July 29, 1896, it was contended by McB that C's original application contained no claim to the invention of the issue, and that not until five months thereafter and after the rejection of his claims in part did C amend by setting up the claims of McB's patent, and that consequently C was estopped to claim priority of invention thereof as against McB's subsequent application for reissue. Held, *distinguishing* Bechman v. Wood, 15 App. D. C. 484: (1) that McB did not come into the Patent Office originally after C, but before, and when he made his reissue application C's later claims had been made, and therefore he did not stand in the situation of one who claims a specific invention with specifications and claims that are not embraced in the original application of an earlier applicant, but which the latter seeks by subsequent amendment to dominate with claims that have no foundation in the original description of his invention ; and (2) that the amended claims of C were clearly shown and described in the specifications of his original application and that his amendment constituted no departure which would subordinate him to the claim of even an intervening applicant.

4. Whether there has been such public use of an invention as to amount to an abandonment to the public will not be determined in an interference proceeding to determine priority of invention as between the parties thereto.

5. The delay of one of the parties to an interference in applying for a patent or in making commercial use of his invention, *held,* upon the evidence, not to be such as to indicate an intention to suppress or conceal his invention from the public that would subordinate his right to that of his rival who promptly applied for and obtained a patent.

No. 135. Patent Appeals. Submitted January 9, 1900. Decided February 13, 1900.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. George P. Barton* and *Mr. H. A. Seymour* for the appellant.

*Mr. Charles C. Bulkley* and *Messrs. Foster & Freeman* for the appellee.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. This is an appeal from the decision of the Commissioner of Patents in a case of interference.

The appellant, Frank R. McBerty, holds a patent for an electrical device called a "strong-current arrester," issued August 13, 1895, No. 544,368; and the interference was declared between an application for a reissue thereof, filed March 22, 1897, and the original application of Frank B. Cook, filed July 29, 1896.

The issue in controversy is defined as follows:

"1. The combination with a heating-coil, of a small quantity of conducting material adapted to be fused by the heat of the coil, a switch-spring held under tension by said fusible conducting material, and an electric circuit including said heating-coil, fusible material and spring-switch in series, whereby the fusing of said fusible material permits the movement of said spring-switch to open the circuit.

"2. The combination with a small resistance-coil, of a spool of good heat-conducting material upon which the coil is wound, a stem secured to said spool by easily-fusible solder, a spring adapted to move said stem out of contact with the spool when the solder is fused, and an electric circuit including said coil, spool, solder and stem in series; whereby the detachment of said stem from the spool effects the opening of the circuit."

The general object of the invention is to provide a ready and certain means for protecting the delicate apparatus of a

telephone circuit, and the persons using the same, from the injuries often produced by the encroachment of the dangerous currents of electric light wires and wires conveying power to street railways.

The contest for priority of this invention, as it is defined in the issue aforesaid, has been decided in favor of the appellee Cook, by each tribunal of the Patent Office in succession.

2. The evidence so plainly supports the conclusions of those tribunals on the following points and has been so thoroughly discussed in their decisions, that it would be idle to review it here. These are, first, that McBerty conceived the invention of the issue in June and followed it with reduction to practice in July, 1893; second, that Cook conceived his invention in 1891, made his first device in that year, made others in 1892, tested them in those years, and put them to such tests as amounted to a complete reduction to practice.

3. The leading contention of the appellant is, that the inventions of the respective parties, as originally made and embodied in their representative devices, are different and distinct types of strong-current protectors; and hence that the reduction to practice by Cook, if conceded, was not a reduction to practice of the McBerty invention as defined in the issue.

It is claimed on one hand, and correctly, that the McBerty device, in construction and operation, is specially designed to arrest abnormally strong currents that may accidentally encroach upon the telephone circuit by means of a break in that circuit of sufficient extent to absolutely prevent the formation of a persistent arc. To accomplish this effective disruption, the device is so constructed and arranged that upon the passage of the abnormal current through the heating-coil, the heat created in the latter thereby being transmitted to the metallic spool upon which the coil is wound will promptly fuse the solder or other cement that

secures the stem in place and maintains the circuit. This fusing of the solder or cement releases a spring, which withdraws the stem and breaks the circuit.

The separation of the former points of contact is so great that the current can not leap the chasm.

On the other hand, it is claimed that the Cook devices of 1891 and 1892 constitute what are properly called "circuit-shunting protectors"—that is to say, protectors that do not operate by breaking the circuit, but by shifting or switching the current into connection with some low-resistance conductor, through which it will flow around the instruments to be protected.

In the original Cook devices, as exhibited and explained, the heating coil, when abnormally charged, fuses the solder in the spool and releases from contact two springs opposed to each other and which in their retraction break the circuit, though to a much less extent than is the case in the McBerty device. At the end of the backward movement one spring touches a bar that makes a ground connection, through which the current flows. In the latter device described in the application the other spring connects with a bar that operates a signal and enables the place of interruption to be located.

The foregoing contention has been considered at length and with apparent care by each of the expert tribunals of the Patent Office, and has by each in turn been declared unfounded. For that reason alone it would require a clear and satisfactory showing of error to warrant us in reversing their decisions.

Having examined the specifications of Cook and all of the testimony relating to the conception, construction and practical operation of his 1891 and 1892 devices, in the light of the searching analysis of the same made by the counsel for the appellant on the argument, we are compelled to say that we have found no such error.

The first operation of the device is to break the circuit

through the fusion of the solder holding the spring in position. After this has been accomplished the formation of the new circuit or ground connection takes place through the contact for that purpose created by the retraction of one of the springs. That the disruption of the telephone circuit is accomplished by the action of two springs instead of one, as in McBerty's device, seems to be of no practical importance. They are substantially equivalent.

Testimony was given by McBerty himself, who is an expert, tending to show that the disruption of the circuit which first takes place in Cook's device could not be and evidently was not relied on alone, because the gap made in the circuit is not sufficient to prevent the dangerous current from leaping it and maintaining the resulting arc; and the comparatively slight separation that takes place is claimed to be a mere incident to the main object, namely, the shifting or shunting of the current by means of the new circuit arranged for the purpose. This opinion was controverted by evidence on behalf of Cook, and in connection therewith some testimony was offered to show that in some of the tests of the device it had operated successfully through breaking the circuit without establishing the new one.

Now, it may be that the extent of the separation provided for, especially in the earlier device, would not, in some instances of excessive abnormal currents, be sufficient to stop their flow into the instrument or apparatus to be protected therefrom, and that without the immediate establishment of the shunting or diverting circuit the injury to the apparatus could not be averted. But this exceptional condition, if well established, would not, in our opinion, alter or impair the effect of the fact that the disruption of the circuit and consequent protection thereby, is an independent primary function of the device within the contemplation of the inventor. His conception seems clearly to have been what he now claims for it—a circuit breaking arrester, with the additional feature of the shifting circuit.

4. An attempt has also been made to bring this case within the operation of the rule laid down in *Bechman* v. *Wood,* 15 App. D. C. 484.

The contention is that Cook's original application of July 29, 1896, contained no claim whatever to the invention of the issue; that not until five months thereafter, and after the rejection of his claims in part, did he amend by setting up the claims of the McBerty patent now in the issue; and that consequently he is now estopped or barred to claim priority of invention thereof as against McBerty's subsequent application for reissue.

In the first place, it may be remarked in passing, that the attitude of the parties is quite different from that shown in *Bechman* v. *Wood.* McBerty did not come into the Patent Office originally after his rival, but before; and when he made his reissue application, his rival's later claims had been made. He does not, therefore, stand in the situation of one who claims a specific invention, with specifications and claims that are not embraced in the original application of an earlier applicant, but which the latter seeks by subsequent amendment to dominate with claims that have no foundation in the original description of his invention.

We agree, however, with the Commissioner of Patents that the amended claims of Cook are clearly shown and described in the specifications of his original applications, and that his amendment constitutes no departure which would subordinate him to the claim of even an intervening applicant, as was the case in *Bechman* v. *Wood.*

Without setting out the original application, which is given in the record, the following extracts therefrom are sufficient foundation for our conclusion :

".  .  . Figures 12 and 13 are longitudinal sectional views of my improved heat-coil protector, respectively showing the position of the parts when connected and disrupted.

.  .  .

".  .  . In carrying out my invention I provide heat-

coil protectors, that is, an automatic circuit-breaker, operated initially by the heat-coil thereof, which are adapted to sever or disrupt the circuits under the influence of quantitative currents but approximately slightly in excess of the normal currents. . . .

"When an abnormal quantitative current traverses the heat-coil 59, the fusible material 57 is melted and a separation is caused by the tension of the contact-springs, thus disrupting that circuit."

5. This brings us to the last proposition in the case important to be discussed. Here again we can not agree with the appellant. In our opinion, the delay of Cook in applying for a patent, or in making commercial use of his invention, was not such as to indicate an intention to suppress or conceal his invention from the public that would subordinate his right to that of McBerty, who promptly applied for and obtained a patent. It is not necessary to detail the evidence explanatory of the delay. That has been done in a satisfactory manner in the decision of the Commissioner. It is barely possible, from the evidence, that there may have been such public use as to amount to an abandonment to the public; but that question is not involved, and it is only a possible inference from the proof in regard to reduction to practice in the telephone system of Des Moines in 1891 or 1892.

The facts are not sufficient to bring the case within the rule enounced in *Mason* v. *Hepburn*, 13 App. D. C. 86, and *Warner* v. *Smith*, 13 App. D. C. 111, and that rule will not be extended to any case not coming clearly within it. The case falls rather within the governing principle of the later case of *Esty* v. *Newton*, 14 App. D. C. 50, 53. As was said in that case, delay is often a potent circumstance in aid of the determination, in a case not otherwise clear, of the question whether an invention had been successfully reduced to practice or had resulted in nothing more than an abandoned experiment. That point does not occur in

the case at bar, because, as stated in the beginning, the evidence of actual and successful reduction to practice is ample.

The decision appealed from will be affirmed, and this result certified to the Commissioner of Patents in accordance with law.    It is so ordered.                    *Affirmed.*